## CARL JACOBSON AND ANOTHER v. BERTHA VIOLA EDMAN, BY CYRIL BARNACK, HER GUARDIAN AD LITEM.[1]

March 30, 1951.

No. 35,449.

*Henry Nycklemoe,* for appellants.
*Field, Field & Arvesen* and *Norman Arvesen,* for respondent.

LORING, CHIEF JUSTICE.

This is an action, sounding in contract, brought to recover compensation for board and lodging furnished to defendant. At the close of plaintiffs' case, the trial court granted defendant's motion to dismiss upon two specific grounds, to wit:

1. "That the plaintiff [*sic*] has failed to prove any obligation on the part of the defendant to pay for any services claimed to have been rendered."

2. "That the admission of the plaintiff [*sic*] and the admissions contained in the complaint indicate that the plaintiffs in rendering any services did so in full knowledge or with full knowledge that they were dealing with an incompetent who was prevented by law

[1]Reported in 47 N. W. (2d) 103.

from entering into contracts and that with that knowledge they stand in the position of volunteers who expected no payment and who should receive none."

The court's order dismissing plaintiffs' action was made on the further general ground that there was no evidence upon which a verdict or decision in plaintiffs' favor could be sustained and that plaintiffs had failed to substantiate or establish their cause of action or right to recover. Plaintiffs have appealed from the judgment.

Defendant, Bertha Edman, was born in Leaf Mountain township, Otter Tail county, in the state of Minnesota, on April 3, 1904. Her father was killed before she was born. Her mother subsequently remarried, had five children by her second husband, and apparently has had no concern for defendant since shortly after her birth: For some time prior to 1934, defendant lived with the father of plaintiff Carl Jacobson. In 1934 she went to live with plaintiffs. At that time she was 29 years of age, an incompetent under the legal guardianship of her uncle, and the owner of a 40-acre tract of land and some personal property. All these facts were known to plaintiffs.

When defendant went to plaintiffs' farm in Leaf Mountain township in the fall of 1934, she asked if she might stay with them for a while, since she did not have another place to go. Because plaintiffs knew defendant well and knew that she was incompetent, or "sickly," as they put it, they permitted her to stay with them. They frankly admit that they did not at that time expect compensation for the board and lodging which they gave her. However, they did not expect that she would stay with them for any appreciable length of time.

Defendant lived with plaintiffs 15 years altogether; 14 years on their farm in Leaf Mountain township and one year in the village of Clitherall. In 1940, defendant engaged an attorney and arranged to have herself restored to competency and removed from the guardianship of her uncle. Finally, in 1949, she was committed to a state institution and has not lived with plaintiffs since.

Plaintiffs seek to recover payment for board and lodging furnished defendant during the six years included in the period following her restoration to competency and prior to her final commitment in 1949. During this period, plaintiffs frequently asked defendant to find a different place to live and told her that they could not afford to keep her. At various times during the period when she was living with plaintiffs, they asked her uncle, who was her guardian, her mother, her half brothers and half sisters, and finally the township board and the county welfare board, to find a place for defendant to live, but they failed to receive any help.

There is a conflict in the evidence as to whether defendant performed any useful services in plaintiffs' home. In prior judicial proceedings, the attorney for plaintiffs designated defendant's status as that of a "house servant," but all the other evidence indicates that defendant was so weak of mind during the time she lived with plaintiffs that she performed no useful service and was instead a burden upon the household and a source of inconvenience and embarrassment to plaintiffs. Defendant is in no way related to plaintiffs.

With reference to the second ground upon which the trial court dismissed plaintiffs' action, the court was clearly in error. Plaintiffs make no claim for services furnished to defendant while she was incompetent. Therefore, the court's assumption that plaintiffs were volunteers and that they could not have expected payment because they knew they were dealing with an incompetent is entirely unfounded.

A greater problem may be posed by a consideration of the first ground upon which plaintiffs' action was dismissed, namely, that plaintiffs have failed to prove any obligation on the part of defendant to pay for the services claimed to have been rendered. However, it appears to be conceded that board and lodging were furnished to defendant during the period for which payment is claimed. There is undisputed testimony that defendant asked plaintiffs to provide her with board and lodging and that she continued to accept those services. There is undisputed testimony that while

defendant was under the guardianship of her uncle plaintiffs frequently asked him to do something for defendant; that after defendant was restored to competency plaintiffs asked defendant to find another place to live because they could not afford to keep her; and that, at various times, plaintiffs asked defendant's mother, the town board, and the county welfare board to find a place for defendant. We think the undisputed evidence was sufficient to take plaintiffs' case to the jury.

Where a person receiving board and room is not related to the persons furnishing them and such services are accepted with knowledge that the persons furnishing them cannot afford to give them gratuitously, a promise to pay for them may be implied.

It is a well-settled general rule that, in the absence of circumstances indicating otherwise, it is inferred that a person who requests another to perform services for him thereby bargains to pay for the services rendered.[2] The facts of this case clearly invoke the general rule, unless they also indicate that plaintiffs did not expect payment and that defendant entertained a reasonable belief that she would not be expected to pay.

The evidence in this case must be considered in light of its source. Plaintiffs obviously are uneducated lay persons, having a poor command of the English language. It is understandable that they did not express themselves in terms having direct legal significance. Mrs. Jacobson testified that she repeatedly told defendant they could not afford to keep her. At only one point in her testimony did she state that she had made any demand on defendant. It is quite clear that plaintiffs did not think in terms of demand for payment, or, at least, were too kindhearted and polite to bluntly demand payment from defendant. Their way of letting defendant know that they could not keep her gratuitously was to tell her that they could not afford to keep her. Even if, under these circum-

[2]Johanke v. Schmidt, 79 Minn. 261, 82 N. W. 582; see, Dartt v. Sonnesyn, 86 Minn. 55, 90 N. W. 115; 58 Am. Jur., Work and Labor, § 3; Annotations, 7 A. L. R. (2d) 12, 54 A. L. R. 548; 28 R. C. L. 668; Restatement, Restitution, § 107(2).

stances, defendant thought that she could stay on and would not be obliged to pay her way, at least to the extent of her means, we think a jury would be entitled to find that she was not justified in so thinking. It can hardly be presumed that these plaintiffs, who were in straitened financial circumstances, intended to provide free board and lodging to defendant, a nonrelative, for 15 years when they knew that she had some means of self-support. The presumption is all to the contrary. One court, at least, thought it preposterous that a woman would assume the burden of supporting her own nieces gratuitously for 15 years when their father was capable of paying for their support.[3] Even if it is not preposterous to assume that plaintiffs here donated board and room, it is so far unlikely—and the evidence is so much to the contrary—that the trial court was in error when it took this question from the jury.[4]

Reversed and remanded for a new trial.

---

[3]Snyder v. Guthrie, 193 Iowa 624, 187 N. W. 953, 24 A. L. R. 950.

[4]Cf. High v. Supreme Lodge, 210 Minn. 471, 298 N. W. 723, where a finding of an implied promise to pay the reasonable value of legal services was upheld on less persuasive evidence than that which has been introduced in the present case.